IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANET CARTER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 10-2927 |
| UNITED STATES OF AMERICA | : | |

MEMORANDUM RE: DEFENDANT'S MOTION
FOR JUDGMENT ON PARTIAL FINDINGS

**Baylson, J.**                                                                                                         December 27, 2011

This Court initiated a non-jury trial in the above-captioned case on October 14, 2011. Presently before the Court is a Motion for Judgment on Partial Findings (ECF No. 49), filed by Defendant United States of America ("Defendant" or the "government") pursuant to Rule 52(c) of the Federal Rules of Civil Procedure. The government had previously filed a Motion for Summary Judgment (ECF No. 21), pursuant to Rule 56 of the Federal Rules of Civil Procedure, but the Court held the motion under advisement and indicated that it would initiate a non-jury trial on the scheduled date with Plaintiff Janet Carter ("Plaintiff" or "Ms. Carter") presenting her evidence only, at the conclusion of which, the government could then move for judgment on partial findings. After careful consideration of the evidence presented at trial and the parties' post-trial briefing, and for the reasons set forth below, which constitute the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the government's Motion for Judgment on Partial Findings is granted.

I.   **Legal Standard**

Rule 52(c) of the Federal Rules of Civil Procedure provides that "[i]f a party has been

1

fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 52(c). "A court may grant a Rule 52(c) motion made by either party or may grant judgment sua sponte at any time during a bench trial, so long as the party against whom judgment is to be rendered has been 'fully heard' with respect to an issue essential to that party's case." EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 272 (3d Cir. 2010).

"In considering whether to grant judgment under Rule 52(c), the district court applies the same standard of proof and weighs the evidence as it would at the conclusion of the trial." Id. "Accordingly, the court does not view the evidence through a particular lens or draw inferences favorable to either party." Id. The court "should also make determinations of witness credibility where appropriate," and "if the court enters judgment under Rule 52(c), it must make findings of fact and conclusions of law pursuant to Rule 52(a)." Id. at 273.

## II.     Findings of Fact

The incident in this case took place on July 27, 2008 when Ms. Carter tripped and fell at the Beverly National Cemetery ("Beverly") in Burlington County, New Jersey, a facility owned and operated by the Veterans Administration. This case is therefore a tort action proceeding pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671 et seq. The Court finds that Ms. Carter was a credible witness. In summary fashion, she testified as follows.

On the afternoon of Sunday, July 27, 2008, Ms. Carter, her son Chavelle Carter ("Mr. Carter") and her fried Judina Lewis traveled by car to Beverly to visit the gravesite of Ms. Carter's parents and Mr. Carter's grandparents, Mildred and James Carter. At the time, Ms.

Carter and her son had been visiting the gravesite once every week or two since her mother's burial in 2005. The gravesite was located at row K of the cemetery. On one side of the tombstone at the gravesite was inscribed the name of James Carter and on the opposite side of the same tombstone was inscribed Mildred's name.

On that afternoon, Mr. Carter parked the car about fifty feet from the gravesite, closer to the side of the tombstone bearing Mildred's name. Ms. Carter and her son walked to the gravesite while Ms. Lewis stayed in the parked car. As was their usual custom, on that afternoon, Ms. Carter and her son stood in front of the tombstone for approximately fifteen to twenty minutes. While they stood before the tombstone, neither Ms. Carter nor her son saw or noticed any hole or depression in the ground.

Mr. Carter then started walking back to the parked car. He walked in front of his mother intending to open the car door for her. As Ms. Carter was following her son back to the car, she stepped, left foot first, into a depression located a few feet in front of the side of the tombstone bearing her father's name. She lost her balance and stumbled, putting her right foot in the depression as well. Mr. Carter did not see his mother fall. When she did not respond to something he was saying, Mr. Carter looked back and saw his mother on the ground. He went to her, took her by the arm, and walked her to the car. As he was helping her back to the car, Ms. Carter told her son that she had fallen in a hole.

Ms. Carter testified to the nature of her injuries, and the expenses she had incurred because of her medical treatment.

Plaintiff called Hank Sasse ("Mr. Sasse") as a witness, a long-time caretaker at Beverly, who described the procedures for lawn cutting and other grounds maintenance. Mr. Sasse

indicated that the various caretakers took turns mowing the lawn and the system worked well. He testified to the frequency of lawn cutting and that in July 2008, the caretakers would inspect the grounds for holes and depressions by sight and by feel as they went through the various sections of the cemetery on their lawnmowers. Mr. Sasse testified that the entire cemetery grounds were mowed, a portion at a time, but each section was mowed once a week. If a hole or depression were found, the standard procedure would be to note the location, and give it to the acting foreman who would assign it to the caretaker handling that section of the cemetery, for filling. Mr. Sasse described the configuration of the lawnmowers used, and testified that the lawnmowers would have detected depressions in the cemetery grounds, given the procedures described above. He testified that most holes in the cemetery were caused by a breakdown of a casket and the ground above the casket emptying into a hole, and a hole could develop suddenly, even on an overnight basis. He also testified as to the cause of brown spots. He did not have any personal knowledge of any hole or depression prior to July 27, 2008, around the gravesite of Ms. Carter's parents.

 Plaintiff also called as a witness her son, Mr. Carter, who testified that as he and his mother were leaving the gravesite, he heard his mother yell out, but he did not actually see her fall. When he turned around, his mother was lying on the ground, evidencing some pain. He then took photographs of the site where she had fallen, which the Court admitted into evidence. At trial, he testified that in the months leading up to the incident, he observed that the grass was no longer green, there were a number of brown spots, the grass had not been cut, and the cemetery no longer looked like a golf course, as it had previously.

 On cross examination, Mr. Carter admitted that he had given a written statement shortly

after the incident, which was materially different in some important respects from his testimony at trial.  Moreover, in his deposition testimony, Mr. Carter testified that the only thing he remembered about the cemetery grounds prior to July 2008 was that there was no grass growing on his grandmother's grave.  Otherwise, he stated at his deposition that the cemetery "looked like it was up kept to me.  The grass was cut and the flowers were all planted."  Given this material impeachment of Mr. Carter, the Court does not find him a credible witness as to the condition of the cemetery on the day of the incident.

### III.    Conclusions of Law

As an initial matter, under the FTCA, "liability is determined in accordance with the substantive law of the place where the alleged negligent act or omission occurred." Gannon v. United States, 571 F. Supp. 2d 615, 638 (E.D. Pa. 2007) (citing 28 U.S.C. § 1346(b)(1)); see also DeJesus v. U.S. Dep't of Veterans Affairs, 479 F.3d 271, 279 (3d Cir. 2007); Matsko v. United States, 372 F.3d 556, 559 (3d Cir. 2004).  Therefore, because the alleged tort occurred in a cemetery located in New Jersey, the Court will apply the general law of New Jersey as to the liability of a landowner, such as the government, in this case.

As discussed more fully below, Plaintiff has failed to meet her burden of proof with respect to two independent, essential elements of her negligence claim.  First, Plaintiff has failed to establish that the government had notice of the depression.  And second, Plaintiff has failed to establish that the government failed to perform a reasonable inspection of the cemetery grounds.

#### A.    Constructive Notice

Under New Jersey law, a landowner owes a duty of reasonable care to an invitee to "guard against any dangerous conditions on his or her property that the owner either knows about

or should have discovered." Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 434, 625 A.2d 1110 (1993).[1] "Ordinarily an injured plaintiff asserting a breach of that duty must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident." Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563, 818 A.2d 314 (2003).[2]

"Whether a reasonable opportunity to discover a defect existed will depend on both the character and duration of the defect." Brown v. Racquet Club of Bricktown, 95 N.J. 280, 291, 471 A.2d 25 (1984). The mere "[e]xistence of an alleged dangerous condition is not constructive notice of it." Sims v. City of Newark, 244 N.J. Super. 32, 42, 581 A.2d 524 (App. Div. 1990). Accordingly, the primary inquiry in determining constructive notice is whether the defect existed "for a sufficient length of time" prior to plaintiff's injury that, in the exercise of reasonable care, defendant should have discovered the defect's existence and remedied it. Jensen v. Hilton Newark Airport, No. 09–CV-1290(SDW)(MCA), 2011 WL 1792374, at *5 (D.N.J. May 10, 2011) (quoting Tua v. Modern Homes, Inc., 64 N.J. Super. 211, 218, 165 A.2d 790 (App. Div. 1960)); see also St. George v. Colonia Girls Softball League, 2010 WL 2795330, at *8 (N.J.

---

[1]The parties do not dispute that Plaintiff was an invitee for purposes of determining the standard of care owed by the government in this case. See Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 433-34, 625 A.2d 1110 (1993) (distinguishing among the traditional standards of care owed to an invitee, a licensee, and a trespasser).

[2]Under the "mode of operation" rule – "a very limited exception to the traditional rules of business premises liability"– a plaintiff need not prove notice when "the proprietor of a business could reasonably anticipate that hazardous conditions would regularly arise simply from the operator's method or manner of doing business." Carrol v. N.J. Transit, 366 N.J. Super. 380, 389, 841 A.2d 465 (App. Div. 2004). In this case, Plaintiff does not contend that the mode of operation rule applies. Nor is the Court aware of any precedent extending the rule to these circumstances under New Jersey law.

Super. Ct. App. Div. July 16, 2010) (citing <u>Ertle v. Starkey</u>, 292 N.J. Super. 1, 8-10, 678 A.2d 261 (App. Div. 1996)) ("Notice may be established . . . by proof that the condition existed for a sufficient length of time prior to the accident that, in the exercise of reasonable care, the possessor should have discovered its existence and corrected it.").

In this case, there is no dispute that the government did not have actual notice of the depression. Plaintiff contends, however, that the evidence establishes that the government had constructive notice of the depression. The Court disagrees.

Although Mr. Sasse testified that holes developed from time to time on the cemetery grounds, his testimony is insufficient on its own to establish that the government had constructive notice of the depression at issue.[3] Indeed, there is no evidence that the depression even existed until Plaintiff stepped on top of it. Plaintiff testified that she did not see the depression while standing near her parents' gravesite prior to her fall. In addition, Plaintiff and her son both testified that they never noticed any depression at the gravesite on any of their prior visits to the cemetery. Finally, Mr. Carter further testified that he did not see any depression after he returned to the gravesite following his mother's fall, and was only able to locate it after he spotted his mother's purse on the ground and closely inspected the area. Thus, Plaintiff has failed to establish that the depression existed for a sufficient length of time prior to the incident that, in the exercise of reasonable care, the government should have discovered its existence and corrected it.

In premises liability cases, state and federal courts applying New Jersey law have refused

---

[3] As noted above, Mr. Sasse testified that he did not have any personal knowledge of any hole or depression around the gravesite prior to the incident.

to impute constructive notice to defendants in the absence of such evidence. See, e.g., Wright v. Pritchard Indus., Inc., 2011 WL 847982, at *1, *3 (N.J. Super. Ct. App. Div. Mar. 14, 2011) (granting summary judgment in favor of defendants in absence of proof that anyone previously noticed a problem with hinges on door); St. George, 2010 WL 2795330, at *8 (holding that trial court erred in submitting issue of constructive notice to jury in the absence of evidence of duration of rocks' presence on sidewalk); Jensen, 2011 WL 1792374, at *5 (granting summary judgment in favor of defendant because plaintiff failed to provide evidence showing how long black ice existed in parking lot); Lewin v. Ohrbach's, Inc., 14 N.J. Super. 193, 198, 82 A.2d 4 (1951) (granting defendant's motion for judgment at close of plaintiff's case because there was no proof that hanger was on floor for sufficient length of time to give defendant a reasonable opportunity to discover and remedy the condition).[4]

Moreover, although the Court is unaware of any case applying New Jersey law to the issue of constructive notice in the precise circumstances of this case, cases from other jurisdictions involving injuries on vacant grounds, including cemeteries, support the conclusion that Plaintiff has failed to establish that the government had constructive notice of the depression here. See, e.g., Malone v. Marriott Int'l, Inc., No. EDCV 09-1980 VAP (DTBx), 2010 WL 4537828, at *5 (C.D. Ca. Oct. 29, 2010) (granting summary judgment in favor of defendant when it was uncontested that hole in golf course was not visible when plaintiff stepped in it due to grass overgrowth and plaintiff's husband was unable to find the hole for two or three minutes

---

[4] Some of the cases cited above involve the statutory constructive notice requirement under the Tort Claims Act, N.J. Stat. Ann. 59:4-2. Although this case involves the common law constructive notice requirement, the case law reveals no relevant substantive difference between the two for purposes of the instant analysis.

even when he knew of its location); Schluter v. Am. Golf Corp., No. B170314, 2005 WL 1188115, at * 4 (Cal. Ct. App. May 20, 2005) (affirming summary judgment in favor of defendant when hole in golf course was not visible and two employees who knew of the general location of the hole had to conduct a virtual step-by-step search to find and repair it); Fuller v. City of Kirkland, No. 43536-1-I, 1999 WL 969618, at *2-*3 (Wash. App. Div. Oct. 25, 1999) (granting summary judgment in favor of defendant because there was no evidence that hole in cemetery existed until plaintiff stepped on it and plaintiff acknowledged that he had stepped on what initially appeared to be solid ground); Jackson v. City of Cleveland, No. 68133, 1995 WL 415241, at *2 (Ohio Ct. App. July 13, 1995) (affirming summary judgment in favor of defendant because there could be no inference that depression on cemetery grounds existed for any length of time, and plaintiff and wife testified that hole was not visible due to snow cover prior to plaintiff's fall); Finn v. State of Illinois, 24 Ill. Ct. Cl. 177, 1961 WL 6745, at *4 (1961) (denying claim of plaintiff where grass-covered hole on playground was not apparent to plaintiff or park staff).

Accordingly, Plaintiff has failed to establish the essential element of notice on the part of the government.

### B. Duty of Care

Even if Plaintiff had established that the government had constructive notice of the depression, the government would still be entitled to judgment in its favor because Plaintiff has failed to establish that the government breached its duty of reasonable care in maintaining the cemetery grounds. Under New Jersey law, the duty of reasonable care owed to an invitee by a landowner "encompasses the duty to conduct a reasonable inspection to discover latent

dangerous conditions." Hopkins, 132 N.J. at 434.  Ultimately, however, in a given case, "the determination of the existence of a duty is a question of fairness and public policy." Kuzmicz v. Ivy Hill Park Apartments, Inc., 147 N.J. 510, 515, 688 A.2d 1018 (1997).  "Foreseeability of injury to another is important, but not dispositive." Id.  To determine whether to impose a duty on a landowner, a court should consider "the nature of the risk, the relationship of the parties, the opportunity to exercise care, and the effect on the public of the imposition of the duty." Id.

     Mr. Sasse testified about the inspection regime in place at Beverly in July 2008. According to Mr. Sasse, the various caretakers at Beverly took turns mowing the lawn and maintaining the grounds.  Mr. Sasse testified that they would mow the entire cemetery grounds, a portion at a time, once a week.  The caretakers would inspect the grounds for holes and depressions by sight and by feel as they went through the various sections of the cemetery on their lawnmowers. If a hole or depression were found, the standard procedure would be to note the location, and give it to the acting foreman who would assign it to the caretaker handling that section of the cemetery, for filling.  Mr. Sasse described the configuration of the lawnmowers used, and testified that the lawnmowers would have detected depressions in the cemetery grounds.

     In the Court's view, Beverly's inspection regime adequately satisfies the duty of reasonable care that the government owed to Plaintiff in this case.  Imposing a duty on the government to undertake more rigorous inspection efforts than the procedures described above would be neither fair nor in the public interest.  Plaintiff is effectively asking the Court to require the government to devote further resources to the inspection of the cemetery grounds in order to locate all those holes and depressions not detected by the current inspection regime – a regime

that Mr. Sasse testified worked well.  While the government is, indeed, better positioned to detect such defects than visitors to the cemetery, like Plaintiff, such a requirement would be inefficient, in most cases unnecessary, and a waste of government resources, considering the size of the cemetery and the likelihood of someone stepping into a hole or depression left undetected by the current inspection regime.

Although the Court is unaware of any case applying New Jersey law that addresses the standard of care in the exact circumstances of this case, courts in other jurisdictions have determined that inspection regimes similar to Beverly's satisfied the duty of care owed by a landowner to an invitee on vacant grounds, such as a cemetery, for similar reasons to those articulated above.  See, e.g., Malone, 2010 WL 4537828, at *5 ("[I]n order to discover the hole into which [plaintiff] fell, Defendants' groundskeepers would have been required to inspect every inch of the ninety-two acre golf course on hand or foot every day.  Such a requirement would go beyond what can reasonably be expected of a landowner, even one who anticipates visitors on its land."); Schluter, 2005 WL 1188115, at *4 (refusing to require defendants to "perform a tedious search with a certain radius of every gopher they spotted" to detect holes on a golf course); Fuller, 1999 WL 969618, at *3 (granting summary judgment in favor of defendant because "the evidence fails to support an inference that . . . the City's inspection procedures were inadequate to address the known frequency of deteriorating graves in the cemetery"); Finn, 1961 WL 6745, at *4 ("If a recovery were had in all [cases in which someone is injured in a state park], the State could be considered an insurer of everyone using the park facilities and playground areas, which would place an undue burden on the State to make careful inspection of every playground area as to any depression, which might be covered by grass").  Moreover, despite being given a specific

invitation to cite cases with similar facts to the case at bar where a court ruled in favor of a plaintiff, Plaintiff has been unable to provide a single citation.

Accordingly, Plaintiff has failed to establish that the government breached its duty of care.

**IV.    Conclusion**

For the foregoing reasons, which constitute the Court's findings of fact and conclusions of law, the government's Motion for Judgment on Partial Findings is granted.  Accordingly, the government's Motion for Summary Judgment is denied as moot.   An appropriate order follows.

O:\CIVIL 09-10\10-2927 Carter v. United States\Memo re Mot Judgment Partial Findings.wpd